UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIELD McCONNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-1600 (RMC) |
| ) | |
| AIR LINE PILOTS' ASSOCIATION, ) | |
| INTERNATIONAL, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Pilot Field McConnell, proceeding *pro se*, alleges that the Air Line Pilots' Association, International, ("ALPA") breached its duty of fair representation by failing to represent him properly in the grievance process with his former employer, Northwest Airlines, Inc. ALPA filed a motion for summary judgment. Because the Complaint is time-barred under the applicable statute of limitations, summary judgment will be granted in favor of ALPA.

I.  FACTS

Mr. McConnell was employed as a pilot with Northwest Airlines, Inc. ("NWA"). In November of 2006, he went on sick leave. Pursuant to the collective bargaining agreement between NWA and its pilots, NWA could order a pilot who was on sick leave for more than 60 days to submit to a medical exam. The collective bargaining agreement provided:

> B. 1. If the Company has reasonable cause to believe that a pilot has developed a medical impairment to his ability to perform his duties between the routine medical examinations required by the Federal Aviation Administration (FAA), the Company may require

>said pilot to submit to a medical examination from a non-AME[1]
>medical doctor chosen by the Company.  The Company will be
>entitled to: (i) submit to the medical doctor a written explanation of
>the circumstances giving rise to the request for an examination,
>and/or (ii) require that the pilot submit to an examination by any
>non-AME specialist(s) recommended by such doctor.
>
>. . .
>
>Note: This Paragraph B. shall not preclude the Company from
>requiring a pilot to submit to a medical examination under the
>following circumstances: (i) application for disability retirement;
>(ii) initial Captain checkout; (iii) election for continued flying as a
>Second Officer beyond the regulated age (see Section 24 M); and
>(iv) a pilot who is on sick leave or medical leave of absence for 60
>or more consecutive days.

Def.'s Mot. for Summ. J. [Dkt. # 28], Plunkett Decl., Ex. 1 (Collective Bargaining Agreement §15, ¶ B.1).

In January of 2007, after Mr. McConnell had been on sick leave for more than sixty days, NWA ordered him to undergo a medical examination.  Mr. McConnell objected to taking the exam, and he sought assistance from ALPA.  Mr. McConnell contended that NWA lacked reasonable cause to order such a medical exam.  Despite his objection, Mr. McConnell reported for the exam on January 31, 2007.  After that exam, NWA directed Mr. McConnell to submit to an additional examination by a neuro-psychologist, Dr. Elliot, in Los Angeles on March 1 and 2, 2007.  Mr. McConnell did not attend the March 1 and 2 appointment.

NWA wrote to Mr. McConnell that due to his failure to attend the March 1 and 2 appointment, NWA removed Mr. McConnell from sick leave status effective March 2, 2007, pending Mr. McConnell's compliance with the medical exam requirement.  *See* Plunkett Decl.,

---

[1] An AME doctor is an aero medical doctor certified by the Federal Aviation Administration to determine pilots' fitness for flying.  Compl. ¶ 12.

Ex. 4 (Mar. 13, 2007 letter). NWA rescheduled the appointment with Dr. Elliott to March 26, 2007. Instead of attending the rescheduled appointment, Mr. McConnell retired on March 13, 2007. *Id.*, Ex. 5 (June 7, 2007 email); *see also id.*, Ex. 6 (June 29, 2007 email).

Mr. McConnell decided that he wanted to grieve his removal from payroll effective March 2. ALPA is the collective bargaining representative of pilots employed by NWA. On June 30, 2007, ALPA filed a grievance on his behalf. An ALPA attorney, Robert Plunkett, filed the grievance. The grievance alleged that Mr. McConnell "did not receive any directive or direction to see Dr. Elliott" and that he learned of the March 1 and 2 appointment via the March 13 letter from NWA. *Id.*, Ex. 11 (Pre-Grievance No. PGR-1943-07). As a remedy, the grievance requested that NWA pay Mr. McConnell sick leave from March 2, 2007 until his retirement on March 13, 2007, and to recalculate his pension benefits to include this sick leave. *Id.*

While Mr. McConnell claims he never received written notice of the March 1 and 2 appointment with Dr. Elliott, *see* Compl. ¶ 20, the record shows that Mr. McConnell actually knew of the ordered exam and the scheduled March dates. Mr. McConnell noted in a February 6, 2007 email, "I am being sent to LA to see a "neuro-psychiatrist" and "[t]he appointment is set for 1 and 2 March." Plunkett Decl., Ex. 3 (Feb. 6, 2007 email).

On July 3, 2007, Mr. McConnell copied Mr. Plunkett on an email to another person, indicating that Mr. McConnell wanted to be (1) compensated at the pay rate of a 747-400 aircraft pilot until he turned 65 or (2) restored to flying. *Id.*, Ex. 12 (July 3, 2007 email). Mr. Plunkett responded to Mr. McConnell, explaining that the grievance that ALPA filed for him covered back pay from March 2 to March 13 when Mr. McConnell retired. "We have filed no

claim for pay at 400 rates until you would turn 65 as you voluntarily retired and no claim can be brought." *Id*.

On July 8, 2007, Mr. McConnell sent an email to Mr. Plunkett, stating that he wanted to cancel his grievance as follows:

> Please cancel my grievance. I had requested to be returned to flying or be paid out to retirement age. I do not consider 6 days pay adequate. I spoke with a DOJ official who suggested I consider a Qui Tam filing. I have located a QT attorney and I anticipate a meeting with FBI Intel fairly soon. Please advise NWA legal of this request to cancel.

*Id*., Ex. 13 (July 8, 2007 email). Mr. McConnell followed this up with a formal letter, stating "it is my demand that my grievance against NWA be dropped in that it is totally inadequate and contrary to my written instructions." *Id*., Ex. 15 (July 10, 2007 letter); *see also id*., Ex. 17 (July 12, 2007 email) ("ALPA had offered to grieve my removal from pay without cause. However, I had an immediate family member (DOJ) see the communication trail on this and she suggested another remedy. ALPA was kind enough to abort the grievance.").

Mr. McConnell filed this suit on September 17, 2008, alleging that ALPA failed to properly represent him in the grievance process and that ALPA permitted "Plaintiff to be subjected to unfair and biased treatment by NWA," thereby causing Plaintiff to incur the loss of his employment at NWA. In other words, the Complaint alleges that ALPA breached its duty of fair representation by failing to pursue Mr. McConnell's grievance against NWA.[2]

---

[2] Mr. McConnell also alleges that he complained to NWA regarding safety concerns, that modifications have been made to Boeing airplanes that are unsafe and illegal, and that this is the cause of various airplane crashes. *See* Compl. ¶¶ 26-29. He also alleges that Boeing illegally exported military technology regarding the QRS 11 Gyrochips. *Id*. ¶ 27. NWA and Boeing are not parties to this suit, and thus, these allegations are not relevant to Mr. McConnell's suit against ALPA.

ALPA moved for summary judgment.  *See* Def.'s Mot. for Summ. J. [Dkt. 28]. Mr. McConnell objects and moves for summary judgment in his own favor.  *See* Pl.'s Opp'ns [Dkt. ## 30 & 33].

## II. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

Duty of fair representation claims made under Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), are subject to a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-72 (1983) (six-month limitations period found in the NLRA applies to hybrid suit against the union and the employer); *see also George v. Local 639*, 100 F.3d 1008, 1014 (D.C. Cir. 1996) (six-month statute of limitations applies to suits where only the union is sued).  Every circuit that has addressed the issue has held that the six-month statute of limitations also applies to cases under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188.  *See, e.g., Ramey v. Dist. 141 Int'l Ass'n of Machinists*, 378 F.3d 269, 277-78 (2d Cir. 2004); *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992); *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 633 n.13 (9th Cir. 1990) (collecting cases from numerous circuits).  Because ALPA is a labor organization under the RLA, the statute of limitations applicable to a RLA claim applies here.

In a duty of fair representation case, the six-month statute of limitations begins to run when the claimant discovers, or in the exercise of reasonable diligence should discover, the acts that form the basis of his claim.  *Wood*, 958 F.2d at 97; *see also Watkins v. Commc'n Workers of Am.*, 736 F. Supp. 1156, 1160 (D.D.C. 1990) (timeliness is measured from when the employee knew or should have known of the last action taken by the union which constituted the alleged breach of duty of fair representation).  Thus, in a case where the claimant contends that the union improperly abandoned his grievance, the six-month period begins to run when the employee knew or should have known that the union had stopped pursuing his grievance. *Cephas v. MVM, Inc.*, 520 F.3d 480, 488 (D.C. Cir. 2008) (citing *Sanders v. Hughes, Aircraft*

*Co.*, 26 F.3d 132 (Table), 1994 WL 227971 (9th Cir. 1994)).

The duty of fair representation claim in this case is based on ALPA's alleged failure to pursue Mr. McConnell's June 30, 2007 grievance. Mr. McConnell, however, directed ALPA to withdraw his grievance via a July 8, 2007 email and confirmed his desire to withdraw the grievance in a letter dated July 10, 2007. On July 12, 2007, Mr. McConnell noted in an email that "ALPA was kind enough to abort the grievance." Plunkett Decl., Ex. 17 (July 12, 2007 email). Thus, by at least July 12, 2007, Mr. McConnell knew that ALPA was no longer pursuing his grievance. He had six months from the time he knew or should have known that ALPA stopped pursuing his grievance to bring suit. Thus, Mr. McConnell needed to file suit against ALPA regarding his breach of duty of fair representation claim no later than January 12, 2008. He did not file this suit until September 17, 2008, well after the statute of limitations had expired. Because this suit is barred by the statute of limitations, the motion for summary judgment will be granted and the Complaint will be dismissed.[3]

## IV.  CONCLUSION

Accordingly, ALPA's motion for summary judgment [Dkt. # 28] will be granted. A memorializing Order accompanies this Memorandum Opinion.


Date: January 24, 2011                          /s/
                                         ROSEMARY M. COLLYER
                                         United States District Judge

---

[3] Further, to establish a breach of the duty of fair representation, a plaintiff must show that the union's conduct was arbitrary, discriminatory, in bad faith, or otherwise unrelated to legitimate union objectives. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. v. Lockridge*, 403 U.S. 274, 299-301 (1971). Here, ALPA stopped pursuing Mr. McConnell's grievance when Mr. McConnell requested that the grievance be withdrawn.